IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RANDALL WILLIAMS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 11 C 1105 |
| vs. | ) | |
| | ) | |
| CITY OF CHICAGO, *et al.*, | ) | Magistrate Judge Sidney I. Schenkier |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs in this case assert violations under federal law against six Chicago police officers stemming from an encounter on April 7, 2010, which occurred while the defendant officers were in the process of executing a search warrant for the second floor and basement apartments of 170 North LaPorte in Chicago. A jury trial is set to commence on February 17, 2015. During a final pretrial conference on January 14, 2015, the Court ruled upon all but three of the parties' contested motions *in limine*. The remaining motions *in limine*, as narrowed by the discussion on the record during the pretrial conference, are as follows: (1) Plaintiffs' Motion *in Limine* No. 4, which seeks to bar evidence of certain convictions of Jacqueline Williams; (2) Plaintiffs' Motion *in Limine* No. 12, which seeks to bar defendants from offering exigent circumstances as a basis for entering the first floor apartment at 170 North LaPorte without a search warrant; and (3) Defendants' Motion *in Limine* No. 13, which seeks to bar evidence of judgments of civil liability against Officers Fico and Hertko. The motions are fully briefed, and for the reasons set forth below, the motions are granted in part and denied in part.

**I.**

Plaintiffs' Motion *in Limine* No. 4 seeks to bar defendants from offering evidence (in the event she testifies) of Jacqueline Williams's three prior felony convictions for possession of controlled substances (doc. # 149: Defs.' Mem. at 2). The most recent conviction was in 2006, while two earlier convictions occurred in 2001 and resulted in concurrent five-year prison sentences imposed in January 2002 (*Id.*). Defendants maintain that the evidence is relevant not just to impeach Ms. Williams's credibility more generally, but also to provide the basis for them to argue "that it is not reasonable for a person, whom [sic] was the target of a search warrant, to appear on the scene, knowing that she had felony convictions, knowing that if she were discovered, she would be arrested if there was contraband recovered from the home" (*Id.*). Defendants also argue that this evidence will allow them to rebut any irrelevant testimony Ms. Williams may seek to offer that "attempt[s] to imply some impropriety by Defendant officers in that [she], as the target of the search warrant, was on scene and despite approaching the home, was not arrested by Defendant officers" (*Id.*). Plaintiffs oppose the motion and seek to bar the evidence on the basis that the convictions are substantially more prejudicial than probative under the balancing analysis required by Federal Rule of Evidence 403 (doc. # 155: Pls.' Resp. at 1-2).

Federal Rule of Evidence 609 provides the framework for determining the admissibility of prior criminal convictions for the purpose of impeaching a witness's character for truthfulness. Under Rule 609(a)(2), a conviction must be admitted (whether a felony or misdemeanor) if the elements of the offense "require proving – or the witness's admitting – a dishonest act or false statement." Defendants do not argue that Ms. Williams's convictions for possession of a controlled substance meet that standard. Nor would such an argument have any merit. *See Coles*

*v. City of Chicago*, No. 02 C 9246, 2005 WL 1785326, at *1 (N.D. Ill. July 22, 2005) ("Possession of a controlled substance . . . does not involve dishonesty or false statement").

Under Rule 609(a)(1)(A), any felony conviction of a witness not involving a dishonest act or false statement also must be admitted into evidence in a civil case, unless (a) the danger of unfair prejudice substantially outweighs the probative value of the evidence under Rule 403, or (b) the witness's conviction or release from confinement (whichever is later) occurred more than 10 years ago. If the conviction of period of confinement ended more than 10 years ago, the Court will admit the conviction only if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1).

In deciding whether convictions for drug possession are admissible, we first consider their probative value. Here, we find a tension underlying Rule 609(a)(1) with respect to the probative value of convictions that do not involve dishonesty or false. On the one hand, one purpose of the 1990 amendments to Rule 609(a) was to "resolve[ ] an ambiguity as to the relationship of Rules 609 and 403 with respect to impeachment of witnesses other than the criminal defendant." Advisory Committee Notes to 1990 Amendments to Rule 609. As amended in 1990 (and as constituted today), Rule 609(a)(1) "reflects a judgment that decisions interpreting Rule 609(a) as requiring a trial court to admit convictions in civil cases that have little, if anything, to do with credibility reach undesirable results." *Id.*

On the other hand, "[t]he idea underlying Rule 609, whether right or wrong, is that criminals are more likely to testify untruthfully." *Gora v. Costa*, 971 F.2d 1325, 1330 (7th Cir. 1992). If that was not the case, there would be never be any reason to consider the admissibility of convictions that do not involve crimes of dishonesty or false statement. And, Rule 609(a)(1)

3

plainly contemplates that there will be times when such convictions are admissible, as Rule 609(a)(1) says that they "shall" be admitted subject to Rule 403.

Recognizing this tension, we conclude that Ms. Williams's drug conviction has some (albeit limited) probative value. Defendants' arguments do not persuade us that the convictions have any heightened relevance in this case. We find unconvincing the argument that the convictions are relevant to show that Ms. Williams did not appear on the scene as claimed because, as a felon, she feared she would be arrested if contraband were recovered from her apartment. Defendants have offered no reason why she would not fear arrest if contraband were found in her house, irrespective of her criminal record. And, to the extent that defendants argue that allowing the convictions into evidence is relevant to rebut irrelevant evidence that Ms. Williams might seek to offer, the answer is for defendants to object at trial to the admission of the irrelevant evidence.

Having found the drug possession convictions of limited relevance, we now consider the question of whether unfair prejudice would result from admitting them. We consider separately the 2006 and 2002 convictions.

This Court has previously stated that "Rule 403 does not mandate (or even allow) the exclusion of evidence merely because it is prejudicial; it is only a showing of *unfair* prejudice *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403." *Jones v. Sheahan*, Nos. 99 C 3669, 01 C 1844, 2003 WL 22508171, at *5 (N.D. Ill. Nov. 4, 2003) (citing *Young v. Rabideau*, 821 F.2d 373, 377 (7th Cir. 1987) (emphasis in original)). For the reasons we have given, Ms. Williams's 2006 drug possession conviction has some general probative value on credibility. Defendants have offered nothing that persuades us that the degree of the probative value is anything other than limited.

4

That being said, limited probative value is not the same as no probative value. Rule 403 does not permit the exclusion of probative evidence unless the probative value of that evidence is substantially outweighed by its unfair prejudice. Evidence of a conviction for possession of drugs does not carry "the same potential for inflaming the jury" as does evidence of an armed robbery conviction. *See Jones*, 2003 WL 22508171, at *5. We recognize that evidence of a drug conviction (or any other conviction, for that matter) "may diminish a witness's credibility and image in the eyes of a jury. [But, i]f that alone were enough to exclude a conviction, then no convictions would be admitted under Rule 609(a)(1)." *Id.* We conclude that there is no risk of unfair prejudice that substantially outweighs the probative value of Ms. Williams's 2006 drug conviction.

Ms. Williams's January 2002 convictions require a different analysis, because they occurred more than 10 years ago. Defendants point out that Ms. Williams received concurrent five-year sentences on those offenses, presumably to suggest that was not released from prison until January 2007 and thus her confinement did not end more than 10 years ago. But, that clearly was not the case, since Ms. Williams picked up another conviction in 2006 and thus had already been released by then.

More importantly, defendants do not disclose precisely when Ms. Williams was released from prison on the sentences. That is a critical omission because, under the possession offenses for which Ms. Williams was convicted, the time she actually was required to serve on her sentences was eligible for reduction through good time credits earned while in prison. *See* 730 ILCS 5/3-6-3(a)(2.1) (West 2004). In addition, we do not know whether Ms. Williams was in custody prior to the conviction, which, if so, would be time further credited against the five-year

sentence. For these reasons, defendants have failed to show that her confinement ended only within the past 10 years.[1]

Convictions (and resulting confinement) that ended more than 10 years ago are admissible only if defendants were to offer specific facts and circumstances that show the probative value of the convictions substantially outweighs their prejudicial effect; that is, the reverse of the Rule 403 analysis. As we have explained, the probative value of the drug possession convictions is limited. That limited value falls far short of substantially outweighing the prejudicial effect of their admission.

We, therefore, grant in part and deny in part plaintiffs' motion to exclude evidence of Ms. Williams's conviction for drug possession. We further hold that defendants must limit their proof on this point to: (a) the date of Ms. Williams's 2006 convictions; (b) that the convictions were for possession of a controlled substance; and (c) the sentences that were imposed.

## II.

Plaintiffs' Motion *in Limine* No. 12 seeks to bar defendants from offering evidence or argument that there were exigent circumstances that justified the entry into the first floor apartment at 170 North LaPorte even though the officers lacked a search warrant authorizing that entry. "Exigent circumstances" are an exception to the requirement for a search warrant, and are established by proof that the officer "had an objectively 'reasonable belief that there was a compelling need to act and no time to obtain a warrant.'" *United States v. Bell*, 500 F.3d 609, 613 (7th Cir. 2007) (quoting *United States v. Andrews*, 442 F.3d 996, 1000 (7th Cir. 2006)). Exigent circumstances may exist where there is a need "to prevent the imminent destruction of

---

[1] We recognize that upon her release, Ms. Williams may have been subject to parole or other supervision. However, that is irrelevant to the calculation of the 10 year period under Rule 609(b). *United States v. Rogers*, 542 F.3d 197, 201 (7th Cir. 2008) (holding that the 10 year time limit in Rule 609(b) "does not include periods of probation or parole," and that the "clock starts at the witness's release from any physical confinement . . .").

6

evidence," *Kentucky v. King*, ___U.S. ___, 131 S. Ct. 1849, 1856 (2011) (quotations omitted), or to protect the safety of officers or of the public. *United States v. Webb*, 83 F.3d 913, 916 (7th Cir. 1996). In assessing whether exigent circumstances existed at the relevant time, a court must assess the question from the perspective of what the officers on the scene "reasonably should have known at the time of their warrantless home entry." *Hawkins v. Mitchell*, 756 F.3d 983, 992 (7th Cir. 2014).

Plaintiffs argue that based on the information disclosed in discovery, defendants will be unable to establish that exigent circumstances existed for the warrantless search of the first floor apartment. Plaintiffs point out that no officer claims to have seen Randall Williams—the person in the first floor apartment who refused to permit entry to law enforcement—commit any criminal act (doc. # 152: Pls.' Mem. at 2). Plaintiffs further assert that Mr. Williams's refusal to allow the officers to enter the first floor apartment did not show that he was a danger to anyone, but merely that he manifested his desire to be "left alone in his home" for what could have been "a multitude of reasons" (*Id.* at 5). For their part, defendants criticize plaintiffs for offering a "watered-down" version of the evidence. They claim that the evidence will show that exigent circumstances existed because Randall Williams entered the first floor apartment (which was sandwiched between the second floor and basement apartments, for which there was a warrant) against the express directive of Officer Gutierrez, thus causing the officer who entered the first floor apartment—John Frano—to be concerned about officer safety because of "what could be in [that] apartment" (doc. # 154: Defs.' Resp. at 2).

There are many questions left unanswered by the parties' respective renditions of the evidence. For example, we do not know why Officer Gutierrez did not want Randall Williams to enter a unit that was not covered by the search warrant, or what he told Randall Williams, or

what Randall Williams said to him. We do not know what Officer Gutierrez told Officer Wayne Frano about his encounter with Randall Williams, or what Officer Wayne Frano in turn told John Frano, that created the concern about officer safety. We do not know where the officers were at in the progress of their search of the second floor and basement apartments (*e.g.*, whether the search was just beginning or was wrapping up). Nor do we know what Officer John Frano was concerned "could be in the apartment," or the basis for that concern.

The answers to those questions, and no doubt others, would provide the Court with a better foundation to determine whether defendants will have a sufficient evidentiary basis to argue to the jury that exigent circumstances justified the warrantless entry into the first floor apartment. We conclude that the best way to obtain those answers is to allow trial testimony about the circumstances that led to the entry into that apartment, and then to determine whether the evidence presents a triable question for the jury on the issue of exigent circumstances.

Accordingly, we deny Plaintiffs' Motion *in Limine* No. 12 insofar as it seeks to bar evidence on the question of exigent circumstances. However, no party may raise that matter in argument or statements before the jury, or use the words "exigent circumstances," pending a ruling by the Court on whether the evidence permits the jury to decide the issue of exigent circumstances.

### III.

In Motion *in Limine* No. 13, defendants seek to bar plaintiffs from offering into evidence recent civil verdicts finding Officer Fico liability on an excessive force claim, and Officer Hertko liable on claims of false arrest and malicious prosecution. Plaintiffs argue that under Federal Rule of Evidence 608(b), this evidence should be permitted on the cross examination of these defendants because the judgments are relevant in assessing their credibility (doc. # 151: Pls.'

Mem. at 2-3). Defendants argue that these verdicts on their face say nothing about the officers' credibility, and that plaintiffs' true agenda is to offer these verdicts as propensity evidence that is barred by Federal Rule of Evidence 404 and that, if admitted, would run afoul of Federal Rule of Evidence 403 because the risk of unfair prejudice and jury confusion would substantially outweigh the probative value of the evidence (doc. # 156: Defs.' Resp. at 2).

Rule 608(b) provides that "[e]xcept for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of: (1) the witness; or (2) another witness whose character the witness being cross-examined has testified about." Plaintiffs cite to decisions allowing inquiry into a witness's prior civil cases where those prior cases involved findings that shed light on the witness's truthfulness or untruthfulness. *See, e.g., U. S. v. Redditt*, 381 F.3d 597, 602 (7th Cir. 2004) (witness's failure to list a conviction on an employment application was proper subject of cross-examination under Rule 608(b)); *Varhol v. Nat'l R.R. Passenger Corp.*, 909 F.2d 1557, 1567 (7th Cir. 1990) (affirming district court's allowance of questioning regarding plaintiff's admission of guilt and subsequent suspension from work for purchasing stolen train tickets); *U.S. v. Manske*, 186 F.3d 770, 775 (7th Cir. 1990) (reversing trial court for refusing to allow threat evidence under Rule 608(b), explaining that "[t]hreatening to cause physical harm to a person who proposes to testify against you is at least as probative of truthfulness as receiving stolen tires or a stolen railroad ticket"); *Battle v. O'Shaughnessy*, No. 11 C 1138, 2012 WL 4754747, at *4 (N.D. Ill. Oct. 4, 2012) (permitting cross-examination of defendant as to a sustained complaint register ("CR")

because the CR involved a claim of putting false information on a police report, which was probative of the defendant's character for truthfulness).

But, the undergirding of those decisions is the conclusion that the prior civil determinations showed something about the credibility of the witness. We do not find that to be the case with the prior civil judgments here. Nothing in the elements of excessive force, false arrest, or malicious prosecution required that the juries find the officers untruthful in order to rule in favor of the plaintiffs. *See, e.g., U.S. v. Seymour*, 472 F.3d 969, 970 (7th Cir. 2007) ("The fact that the officer had used excessive force in another case was a 'specific instance . . . of the conduct of a witness," but it was not probative of his truthfulness") (quoting *Varhol*, 909 F.2d at 1567). In the excessive force judgment against Officer Frano, the jury may have believed his rendition of what occurred but simply determined that, in those circumstances, too much force was applied. In the false arrest judgment against Officer Hertko, the jury may have believed his testimony about the facts but simply disagreed with his decision that those facts established probable cause for the arrest. And, in the malicious prosecution judgment against Officer Hertko, the jury may have found that the elements of that offense were satisfied without finding that Officer Hertko had lied.

Plaintiffs fairly might respond that it also is possible the juries found that those officers did testify untruthfully about certain things. But, while we cannot exclude that possibility, neither can we substantiate it. There were no special interrogatories to the juries that would tell us the paths to their verdicts, and in particular, whether those paths involved a determination that the officers were untruthful. As a result, those prior verdicts present cases where "it was unclear whether and why the witness's testimony had been rejected," which warrants the exercise of our discretion to exclude the evidence. *U.S. v. Dawson*, 434 F.3d 956, 958 (7th Cir. 2006).

What is more, any effort to probe behind the jury verdicts to try to figure out the answers to those questions would be out of bounds. We see no basis to allow an intrusion into the verdicts in those cases to try to divine whether the jury *sub silentio* reached conclusions that were not required by the elements of the claims, and that the jury was not asked to articulate. Moreover, even if an intense scrutiny of the evidence in those cases could shed light on whether the jury found the officers to be dishonest, that kind of focus on other lawsuits would run the substantial risk of unfair prejudice and jury confusion. Unfair prejudice would arise from the possibility that the jurors would treat those prior verdicts as showing that these officers have a propensity to violate citizens' rights; and confusion would stem from the risk that an emphasis on the evidence and verdicts in other cases would distract the jury from the deciding this case based on what occurred between the parties on April 7, 2010. We, therefore, grant Defendants' Motion *in Limine* No. 13.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion *in Limine* No. 4 is granted in part and denied in part; Plaintiffs' Motion *in Limine* No. 12 is denied; and Defendants' Motion *in Limine* No. 13 is granted. The lawyers are responsible for advising their witnesses of these rulings and taking steps to ensure that they do not offer testimony on matters barred by these rulings.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

DATE: January 30, 2015