IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RANDALL WILLIAMS, *et al.*, | ) |
| Plaintiffs, | ) ) ) |
| | ) No. 11 C 1105 |
| vs. | ) ) Magistrate Judge Schenkier |
| VINCENT FICO, *et al.*, | ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION and ORDER**

On February 27, 2015, following a five-day trial, a jury found for defendants City of Chicago, Nicholas Cervantes, John Frano, and Wayne Frano, Jr. (collectively, "Defendants") and against plaintiffs Anthony Bennett, Jeffery Brown, James Mustafa, and Randell Williams (collectively, "Plaintiffs") on their Fourth Amendment claims of excessive force, false arrest, unlawful search and seizure, and conspiracy. This Court then entered judgment in favor of Defendants (doc. # 173). Plaintiffs Jeffery Brown and James Mustafa now move, pursuant to Federal Rules of Civil Procedure 50(b) and 59, for judgment as a matter of law in their favor or, alternatively, for a new trial (doc. # 180). For the reasons set forth below, we deny Plaintiffs' motion and uphold the verdict of the jury finding for Defendants on all counts.

**I.**

We address first Mr. Brown's and Mr. Mustafa's Rule 50(b) motion for judgment as a matter of law. Rule 50 "allows a district court to enter judgment against a party who has been fully heard on an issue during a jury trial if 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Passananti v. Cook County*, 689 F.3d 655, 659 (7th Cir. 2012) (citing Fed. R. Civ. P. 50(a)). "In deciding a Rule 50 motion, the court

construes the evidence strictly in favor of the party who prevailed before the jury and examines the evidence only to determine whether the jury's verdict could reasonably be based on that evidence." *Id.* In so doing, the court does not weigh the evidence or make credibility determinations. *Tart v. Illinois Power Co.*, 366 F.3d 461, 478 (7th Cir. 2004) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000)). Furthermore, while the court reviews the entire record, "it must disregard all evidence favorable to the moving party that the jury [was] not required to believe." *Reeves*, 530 U.S. at 151.

"Overturning a jury verdict is not something that [a court] do[es] lightly." *Massey v. Blue Cross–Blue Shield of Ill.*, 226 F.3d 922, 925 (7th Cir. 2000). A court will do so only if "the moving party can show that no rational jury could have brought in a verdict against it." *Hossack v. Floor Covering Assoc. of Joliet, Inc.*, 492 F.3d 853, 859 (7th Cir. 2007) (internal citations and quotations omitted).

### A.

We turn first to Mr. Brown, and we note at the outset a considerable impediment to his ability to bring his Rule 50(b) motion: Mr. Brown's failure to first raise his arguments pursuant to a Rule 50(a) motion made prior to submission of the case to the jury.[1] As clarified in the 2006 amendment to Rule 50, a Rule 50(b) motion is simply a renewal of a preverdict Rule 50(a) motion:

> Rule 50(b) is amended to permit renewal of any Rule 50(a) motion for judgment as a matter of law, deleting the requirement that a motion be made at the close of all the evidence. Because the Rule 50(b) motion is only a renewal of the

---

[1] Rule 50(a)(2) of Federal Rules of Civil Procedure provides: "A motion for judgment as a matter of law may be made at any time before submission of the case to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment." Rule 50(b) explains that if a Rule 50(a) motion made at the close of all the evidence is denied by the court, the movant may then renew the motion within 28 days after the entry of judgment. Fed. R. Civ. P. 50(b). The movant may also include an alternative or joint request for a new trial under Rule 59. *Id.*

preverdict motion, it can be granted only on grounds advanced in the preverdict motion. The earlier motion informs the opposing party of the challenge to the sufficiency of the evidence and affords a clear opportunity to provide additional evidence that may be available.

Fed. R. Civ. P. 50, advisory committee note (2006 amend.); *see also Prod. Specialties Group, Inc. v. Minsor Systems, Inc.*, 513 F.3d 695, 699 n. 1 (7th Cir. 2008).

Mr. Brown asserts that the language of Rule 50 need not be applied rigidly where the moving party made its arguments clear in previously presented documents, such as motions *in limine* and trial briefs (Pls.' Reply (doc. # 190) at 2). Mr. Brown directs us to *Petit v. City of Chicago*, 239 F. Supp. 2d 761, 767 (N.D. Ill. 2002), and *Urso v. United States*, 72 F.3d 59, 61 (7th Cir. 1995), for the proposition that a Rule 50(a) motion need not always serve as a prerequisite to a Rule 50(b) motion (Pls.' Reply at 2). While Mr. Brown's position may have had support in the case law at one time, the Seventh Circuit has explained that the 1991 amendments to Rule 50 eliminated the practice of using other documents to stand in the place of a Rule 50(a) motion. *Laborers' Pension Fund v. A & C Envtl., Inc.*, 301 F.3d 768, 775-76 (7th Cir. 2001); Fed. R. Civ. P. 50 advisory committee note (1991 amend.) (stating that "[t]he revision thus alters the result in cases in which courts have used various techniques to avoid the requirement that a motion for a directed verdict be made as a predicate to a motion for judgment notwithstanding the verdict"); *see also U.S. E.E.O.C. v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1286 (7th Cir. 1995) (signaling an end to a lenient application of Rule 50, as the 1991 amendments make clear that "only a proper Rule 50(a) motion preserves the issue for later review"). Moreover, neither of the cases Plaintiffs cite applies directly to the factual situation raised here, where there is a complete absence of a Rule 50(a) motion. We thus reject Mr. Brown's position that the failure to file a Rule 50(a) motion may be cured by using other filings such as motions *in limine* or motions for summary judgment to clarify the movant's position.

3

The purpose of requiring a timely Rule 50(a) motion as a prerequisite to a Rule 50(b) motion "is to afford the opposing party an opportunity to cure any defect in its case before the jury retires." *Laborers Pension Fund*, 301 F.3d at 775. Mr. Brown has waived the opportunity to seek relief pursuant to a Rule 50(b) motion because he failed to preserve his arguments pursuant to a Rule 50(a) motion. *See Savino v. C.P. Hall Co.*, 199 F.3d 925, 931 (7th Cir. 1999) ("A party who wants to challenge the propriety of submitting a given claim or defense to the jury is obliged to make a motion under Fed. R. Civ. P. 50(a) at some time prior to the submission of the case to the jury. Failure to make such a motion waives the sufficiency of the evidence point on appeal").

**B.**

That being said, we also conclude that even if Mr. Brown had not forfeited his ability to move for judgment as a matter of law pursuant to Rule 50(b), he still would not be entitled to the relief he seeks. Mr. Brown asserts that Defendants violated his Fourth Amendment right to be free from unreasonable search and seizures. He contends that the search of his body and subsequent handcuffing was unreasonable as a matter of law because he did not live in either of the apartment building units identified in the Defendants' search warrant; he could not reasonably have been mistaken for the target of the warrant of the second floor apartment (a middle-aged woman named Jacqueline Williams); he posed no threat to Defendants; he was handcuffed for an excessive amount of time (approximately two hours); and he was made to sit in his boxer shorts and was not allowed to pull up his pants during much of the time he spent handcuffed (Pls.' Motion for Judgment as a Matter of law ("Pls.' Mot.") (doc. # 180) at 3-5).

The test of reasonableness under the Fourth Amendment is an objective one and requires a careful balancing of the specific facts and circumstances underlying the case, including "the

4

severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor,* 490 U.S. 386, 396 (1989) (addressing the reasonableness of a seizure of the person) (internal citations omitted). Unreasonable actions include the use of excessive force or restraints that cause unnecessary pain or are imposed for a prolonged and unnecessary period of time. *See Muehler v. Mena,* 544 U.S. 93, 100 (2005); *Graham,* 490 U.S. at 396–399. In considering whether actions taken were unreasonable, the interests of law enforcement must be considered, as well. As noted in *Michigan v. Summers,* 452 U.S. 692, 702 (1981), most obvious of these interests is the "interest in preventing flight in the event that incriminating evidence is found. Less obvious, but sometimes of greater importance, is the interest in minimizing the risk of harm to the officers." Even under circumstances where there is no direct evidence of enhanced danger to the police, "the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence, [and] [t]he risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." *Id.* at 702-03.[2]

Mr. Brown contends that it was unreasonable of Defendants to force him to sit handcuffed in his boxer shorts for what he says was two hours, and in support he cites *Muehler* and *Los Angeles City, CA v. Rettele,* 550 U.S. 609 (2007). *Muehler* is a Fourth Amendment case in which the Supreme Court held that the plaintiff's two-to-three hour detention in handcuffs during a search of her dwelling did not outweigh the government's safety interests, particularly

---

[2]The fact that Mr. Brown was not a resident of the apartment building is not dispositive of the reasonableness of the officers' conduct. *See, e.g., U.S. v. Pace,* 898 F.2d 1218, 1239 (7th Cir. 1990) (detention of non-occupants found reasonable under circumstances of case involving large amounts of gambling money and cocaine).

5

where the search involved a hunt for weapons and a wanted gang member. 544 U.S. at 100. In such inherently dangerous situations, the Supreme Court ruled, the use of handcuffs minimizes the risk of harm to both officers and occupants. *Id.*; *see also Summers*, 452 U.S. at 702–703. *Rettele* involved a civil rights claim by the new residents of a home who were asleep, unclothed, in their bedroom when police officers arrived with a valid search warrant—not realizing that the targets of the warrant had moved out of the residence three months earlier. 550 U.S. at 609-10. The plaintiffs were forced to stand, naked, in front of the police officers for several minutes before being allowed to dress. *Id.* at 610. In explaining why the plaintiffs' Fourth Amendment claim failed, the Supreme Court stated that "[o]fficers executing search warrants on occasion enter a house when residents are engaged in private activity," resulting perhaps in their frustration, embarrassment, and humiliation. *Id.* at 615-16. But when those officers "act in a reasonable manner to protect themselves from harm . . . the Fourth Amendment is not violated," notwithstanding the humiliation sometimes suffered by innocent citizens. *Id.* at 616.

With the foregoing case law in mind, we turn to the testimony the jury heard related to Mr. Brown's body search and detention. Mr. Brown testified that he was not an occupant of the apartment being searched, but that he was present at the apartment during the search because he was thirsty and had come over that night for a glass of water (doc. # 178, Trial Tr., Jeffery Brown ("Brown Tr."), p. 39). Mr. Brown testified that he was pulled onto the ground by police officers because he had his back to the officers when they first entered the upstairs apartment (*Id.* at 48-49). Mr. Brown testified that a police officer—he did not identify which one—pulled his boxer shorts down, searched both his boxer shorts and his private parts, and then pulled his boxer shorts back up (*Id.* at 34-35). Mr. Brown stated that he was repeatedly punched and kicked by various police officers, and he specifically identified defendant Nicholas Cervantes as the officer

6

who punched him in the face (*Id.* at 33)—an assertion that Officer Cervantes denied. The jury also heard testimony from Officer Michael Napoli—the officer who "breached" the upstairs apartment door with a battering ram (and was thus the first person into the upstairs apartment and who remained there throughout the search)—that he never saw any police officers put their hands on Mr. Brown or struggle with him in any way (doc. # 192, Trial Tr., Michael Napoli, p. 18). Mr. Brown stated that he never sought medical care for the beating he said he suffered at the hands of the police (Brown Tr. at 36).

Mr. Brown testified that after he had been beaten and searched, various officers put him on his feet and placed him on the living room couch, although they left his pants down around his ankles (Brown Tr. at 34-35). Mr. Brown gave testimony, frequently at odds with his deposition testimony, as to his ability to identify the officers responsible for his search and detention (*Id.* at 67, 71-74). Takayla Williams, who was in the second floor apartment during the entirety of the search, stated that Mr. Brown's pants fell down during the search because he wears his pants "low." (Defs.' Resp. to Pls.' Mot. ("Defs.' Resp.") (doc. # 185), Exh. C, p. 14). Takeyla Williams, who arrived at the second floor apartment while the search was in progress, stated that she saw Mr. Brown's pants around his ankles, that Mr. Brown asked to pull them up, and that police officers "eventually" allowed him to pull his pants back up (*Id.* at Exh. E, p. 11, 23).

At the end of the trial, the jury was instructed that in order for Mr. Brown to prevail, he needed to show that one or more Defendants (meaning, specifically, John Frano, Wayne Frano, or Nicholas Cervantes) detained him, and that the detention was unreasonable. In determining whether Mr. Brown's detention was unreasonable, the jury was instructed to consider: (1) the severity of the suspected crime or other circumstances that led to the search warrant; (2) whether

7

Mr. Brown was the subject of the investigation; (3) whether Mr. Brown posed a threat to the safety of Defendants or to others or to the ability of Defendants to conduct the search; (4) whether Mr. Brown was actively resisting arrest or attempting to flee; and (5) whether Mr. Brown's detention was unnecessarily painful, degrading, prolonged, or involved an undue invasion of privacy. The jury returned a verdict in favor of Defendants as to Mr. Brown's fourth amendment claim and conspiracy claim.

The jury in this case was entrusted with the role of weighing the evidence, making credibility determinations, and drawing reasonable inferences from the facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). We find no reason to disturb the jury's determination in favor of Defendants and against Mr. Brown. With the exception of conflicting testimony regarding Officer Cervantes having hit Mr. Brown in the face, the jury heard no testimony from Mr. Brown specifically identifying John Frano, Wayne Frano, and/or Nicholas Cervantes as the officers who searched his body and then handcuffed him.

Moreover, the evidence allowed a jury rationally to conclude that the detention of Mr. Brown was neither degrading nor unduly prolonged. The police officers were searching for marijuana in the second floor apartment when Mr. Brown was found; but, at the same time, officers were searching for weapons in the basement apartment of the same building. A jury reasonably could conclude that handcuffing and securing Mr. Brown was reasonable under these circumstances, and that the length of the cuffing was reasonable in light of the activities occupying the officers in the other rooms of the second floor and basement apartments.

In addition, the jury was shown a picture of Mr. Brown sitting on the living room couch in his boxer shorts, which were no more revealing of his body than a pair of gym shorts. Certainly, Mr. Brown's situation was a world removed from the situation in *Retelle*, where the

occupants stood, fully exposed, for several minutes. In addition, in this case, the jury reasonably could have concluded from the testimony that Mr. Brown was allowed to pull his pants back up upon his request.

At bottom, it was for the jury to assess the evidence and the credibility of the witnesses who testified about the events at issue. The fact that Mr. Brown disagrees with the credibility determinations of the jury provides no basis for disturbing the verdict. The totality of the evidence was sufficient to permit the jury to conclude that Mr. Brown failed to establish that his detention was unreasonable under the circumstances.

C.

We turn now to James Mustafa's Rule 50(b) motion. Mr. Mustafa argues that insufficient evidence supports the jury's finding that Defendants John and Wayne Frano did not violate his Fourth Amendment right to be free from unreasonable search and seizures when they entered his first floor apartment without a search warrant (Pls.' Mot. at 7).[3]

Under the Fourth Amendment, "a search conducted without a warrant issued upon probable cause is '*per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973) (quoting *Katz v. United States,* 389 U.S. 347, 357 (1967)); *United States v. Borostowski,* 775 F.3d 851, 864 (7th Cir. 2014). One exception to this rule, relevant here, is the presence of "exigent circumstances," *Missouri v. McNeely,* 133 S. Ct. 1552, 1558 (2013), which exist "when there is a compelling need for official action and no time to secure a warrant." *Michigan v. Tyler,* 436 U.S. 499, 509 (1978). Recognized exigent circumstances include: when officers must "step in to prevent serious injury and restore order," *United States v. Huddleston,* 593 F.3d 596, 600 (7th

---

[3] Mr. Mustafa's Rule 50(b) motion does not suffer from the same roadblock as does Mr. Brown's motion: Mr. Mustafa filed a Rule 50(a) motion on February 26, 2015, prior to submission of the case to the jury (doc. # 171).

9

Cir. 2010) (internal quotations and citation omitted); when "police reasonably believe[d] that their safety, or the safety of the public, may be threatened," *id.*; or where the officers are in 'hot pursuit' of a fleeing subject. *Kentucky v. King,* 131 S. Ct. 1849, 1856 (2011). The burden of proof rests with the governmental actors to prove that exigent circumstances existed at the time of the warrantless entry. *United States v. Robles,* 37 F.3d 1260, 1263 (7th Cir. 1994).

There was conflicting evidence at trial concerning the circumstances under which police officers entered Mr. Mustafa's apartment. Mr. Mustafa was not present when the entry occurred. Mr. Mustafa's son, Randell Williams, testified that he received a phone call from a relative that police officers were at his father's building, which caused him to drive to the premises (doc. # 177, Trial Tr., Randell Williams, p. 5). Mr. Williams testified that when he arrived, he saw no police officers stationed outside the building, and he paid no attention to whether there were any police cars parked nearby (*Id.* at 5-6). He stated that he walked into the unlocked building, at which point he encountered police officers who said "show me your hands" (*Id.* at 6). Mr. Williams showed the officers his hands, but, according to Mr. Williams, nothing else was asked of him, and so he entered his father's apartment (*Id.*). Mr. Williams testified that the apartment was empty when he entered it, but it was in disarray: lights were turned on, and drawers were pulled out (*Id.* at 8-9). Mr. Williams testified that he checked the basement apartment (which was accessible from the first floor apartment) looking for his father, and then, shortly thereafter, heard banging on the door and a demand to open the door (*Id.* at 9). According to Mr. Williams, before he was able to do so, the door flew open and numerous police officers entered the apartment (*Id.* at 9-10).

Defendants' testimony painted a very different picture of the circumstances surrounding the entry into Mr. Mustafa's apartment. Officer Humberto Gutierrez, who was posted as a guard

outside the building, testified that his role was "to protect what goes on inside the . . . building and not allow[ ] any subject without the immediate approval of my sergeant to go either inside or outside the door of the premise" (Defs.' Resp., Exh. G, p. 43). Officer Gutierrez testified that he was standing outside the building, trying to deal with an unfriendly crowd of people who had gathered there, when a man—who turned out to be Randell Williams—ran past him and ignored repeated verbal commands to stop (*Id.* at 43, 50-52). Officer Gutierrez stated that he was unable to tell whether the man who ran past him had a weapon (*Id.* at 51). Officer Gutierrez relayed information about the man to other police officers inside the building, including Wayne Frano, and moments later he heard other police officers knocking on the door of the first floor apartment and announcing their presence (*Id.* at 53).

Defendant John Frano testified that he learned from Wayne Frano (his brother) about the presence of a man entering the first floor apartment (Defs.' Resp., Exh. F, p. 62). John Frano testified that he "found it to be suspicious that somebody would run past an officer when that officer is specifically put out there to be the security for the residence while we're conducting those warrants" (*Id.* at 101). John Frano testified that he went downstairs to the first floor apartment with his brother, knocked on the door, and announced his presence (*Id.*). However, the person on the other side of the door refused to open the door (*Id.* at 101-02). John Frano stated that he wanted to know who this person was and why he ran past the security officer (*Id.* at 102). He stated that had Mr. Williams opened the door, shown identification, and clarified who he was and why he was there, then he would have been able to stay in the apartment (*Id.*). But, John Frano stated that "it became a very, very, high security concern for [me] . . . the safety of the officers that are doing the search warrant in the building, [and] the safety of the residents on the second floor," to have a person run past the guard officer, enter the first floor apartment, and

11

not open the door to the police (*Id.* at 102-03). John Frano further testified that "we're looking for guns in the basement of the apartment, and we're looking for drugs on the second floor. At the time, without having the target, which is the person we were looking for in the basement for the guns, there could be the possibility that the person that ran in the first floor could have been that target; and if it was, he could have access to—easy access to the basement" (*Id.* at 103). John Frano testified that it was under those circumstances, and with those concerns in mind, that he forced entry into the first floor apartment (*Id.* at 63, 102-03).

We will overturn a verdict only if "no rational jury" could have reached the result it did. In ruling on Mr. Mustafa's Rule 50(b) motion, the evidence and all reasonable inferences are construed in favor of the non-movant. *Tate v. Exec. Mgmt. Servs., Inc.,* 546 F.3d 528, 531–32 (7th Cir. 2008). We cannot reweigh the evidence or make credibility determinations. *Waite v. Bd. of Trs.,* 408 F.3d 339, 343 (7th Cir. 2005). In our judgment, that is precisely what Mr. Mustafa asks us to do. Mr. Williams and the testifying officers provided starkly different accounts of what occurred. If believed, the officers' testimony permitted the jury to find that legitimate concerns over safety—given the ongoing search, the possibility of weapons in the basement apartment that could be accessed through the first floor unit, and the way in which Mr. Williams entered the building without heeding the officers' command to stop—created exigent circumstances that permitted the officers to enter without a warrant when Mr. Williams denied them entry. Mr. Mustafa may consider the officers' testimony unworthy of belief, but that is of no moment. It was the jury's province to decide the credibility of those competing accounts. We see no sound basis upon which to disturb the jury's decision. We therefore deny Mr. Mustafa's Rule 50(b) motion.[4]

---

[4] Plaintiffs cite two cases in which juries found in favor of plaintiffs on their Fourth Amendment warrantless search claims: *Andrews v. Hickman County, Tenn.,* 700 F.3d 845 (6th Cir. 2012) (exigent circumstances did not

## II.

Both Mr. Brown and Mr. Mustafa alternatively seek a new trial pursuant to Rule 59. A new trial will be granted only if "the verdict stands against the weight of the evidence or if, for other reasons, the trial was not fair to the losing party." *Alverio v. Sam's Warehouse Club, Inc.*, 253 F.3d 933, 939 (7th Cir. 2001). When assessing the sufficiency of the evidence, the Court considers whether any rational jury could find for the plaintiff, considering the evidence in the light most favorable to him. *Emmel v. Coca-Cola Bottling Co. of Chicago,* 95 F.3d 627, 630 (7th Cir. 1996). When considering a claim that a new trial is warranted due to legal errors, we assess the record against the backdrop of the proposition that "[c]ivil litigants are entitled to a fair trial, not a perfect one . . . a new trial will not be ordered unless there was an error that raised some prejudice to the substantial rights of the parties." *Wilson v. Groaning,* 25 F.3d 581, 584 (7th Cir. 1994) (quoting *Lemons v. Skidmore,* 985 F.2d 354, 357 (7th Cir. 1993)).

A party seeking a new trial based on allegedly erroneous evidentiary rulings likewise bears a "heavy burden." *Alverio,* 253 F.3d at 939. The party must show an abuse of discretion in the Court's evidentiary rulings, which is difficult to do. *See Rodriguez v. Anderson,* 973 F.2d 550, 553 n. 3 (7th Cir. 1992) (discretionary rulings will be reversed only if they "strike us as wrong with the force of a five-week-old, unrefrigerated dead fish"). And, the moving party must show that any errors were "substantial enough to deny him a fair trial." *Wilson,* 25 F.3d at 584; *see also Hasham v. Calif. State Bd. of Equalization,* 200 F.3d 1035, 1048 (7th Cir. 2000)

---

exist where police officer who entered home without a warrant had no basis to believe that occupant of home posed a threat to the police and social workers who arrived to check on the well-being of children); and *Sandoval v. Las Vegas Metropolitan Police Dept.,* 756 F.3d 1154 (9th Cir. 2014) (reversing district court's summary judgment ruling in favor of defendant police officers and finding that warrantless search of home lacked probable cause where police entered a home under the incorrect belief that a burglary was in progress and subsequently arrested three Hispanic youths who did not match the description of a white prowler/burglar seen in the neighborhood). Neither of these cases presents circumstances remotely similar to those at issue in this case.

(evidentiary errors warrant a new trial "only if a significant chance exists that they affected the outcome of the trial").

Plaintiffs raise no specific arguments in support of the motion for a new trial. Nor do they point us to evidentiary rulings or other legal errors that they claim were sufficient to deny them a fair trial. Furthermore, for the reasons we have explained in denying the Rule 50(b) motions, the jury verdict was not contrary to the weight of the evidence. We therefore deny Plaintiffs' Rule 59 motions for a new trial.

## CONCLUSION

For the reasons set forth above, the Court denies Plaintiff Jeffery Brown's and James Mustafa's Rule 50(b) Motion for Judgment as a Matter of Law and, alternatively, Rule 59 motion for a new trial.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

DATE: June 15, 2015